618 A.2d 1135

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Petitioner,**

v.

**CRONER, INC., Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 20, 1992.

Decided Dec. 4, 1992.

L. Jane Charlton, Asst. Counsel, for petitioner.

Matthew G. Melvin, for respondent.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

These cases present appeals by the Department of Environmental Resources (DER) from decisions by the Environmental Hearing Board (EHB) which, on cross motions for summary judgment, invalidated certain regulations of DER because they violated the terms of a statute.

This same case was previously appealed to this Court and the facts have been meticulously outlined in the opinion rendered in that appeal. *Croner, Inc. v. Dept. of Environmental Resources,* 139 Pa. Commonwealth Ct. 43, 589 A.2d 1183 (1991). We quote from that opinion those basic facts necessary for an understanding of the instant opinion. We said:

Croner is a coal mine operator. In April 1982, Croner submitted 'Module 16: Blasting Plan' to the department. The plan included a notarized signed release from John J. and Evelyn Hartman. The affidavit provides in pertinent part:

To Whom It May Concern,

We, the undersigned, John H. Hartman and Evelyn Hartman, do hereby grant permission to Croner, Inc. the right to conduct overburden blasting operations within the 300 foot barrier surrounding our buildings.

We do hereby also grant the right to Croner, Inc. to exceed the one inch per second particle velocity requirement and the 132 DB air overpressure requirement so

mining operation can be achieved to remove the coal near our buildings.

The area is covered by S.M.P., # 56663094, Brothersvalley Township, located near Twp. Rte. T–145.

On April 28, 1987, the department approved Croner's blast plan, as part of the surface mining permit previously issued to Croner, subject to the following conditions:

1. When the Scale distance falls below sixty (60) at the Hartman residence or any dwelling, a peak particle velocity of one (1) inch per second and an air over pressure of 132 dBL must be maintained.

2. John and Evelyn Hartman cannot release the vibration limit of one (1) inch per second and 132 dBL air over pressure when blasting occurs closer than 300 feet to their dwelling.

*Croner*, 139 Pa. Commonwealth Ct. at 45–46, 589 A.2d at 1184.

In addition, *Croner I* at 47–48, 589 A.2d at 1185, outlined the interrelationship between the federal law, the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.*, and The Pennsylvania Surface Mining Conservation and Reclamation Act.[1] When Congress enacted the federal SMCRA providing for comprehensive surface coal mining and reclamation regulation, it authorized states to retain primary jurisdiction over such regulation by submitting a state regulatory program to the United States Office of Surface Mining for approval. The federal SMCRA requires states wishing to retain primary jurisdiction over regulation in this field to issue regulations consistent with those issued by the United States Secretary of the Interior. The United States Code of Federal Regulations, in turn, sets forth minimum standards of environmental protection adopted by the secretary pursuant to his regulatory authority under the federal SMCRA.[2]

1. Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§ 1396.1 to 1396.31.

2. For a thorough discussion of the state's SMCRA's regulation to the federal statute and the interplay between the state and federal regulations, see *Croner I* at the above cited pages.

In previous proceedings, the EHB had determined that it had no jurisdiction to decide certain constitutional questions and that Croner, the mine operator, had waived any contention that certain regulations were violative of a section of SMCRA.

This court on appeal held (1) the EHB had jurisdiction to decide the constitutional question and (2) Croner had not waived the issue that certain regulations were violative of the statute.

Hence, we entered the following order:

NOW, April 8, 1991, the decision of the Environmental Hearing Board dated July 26, 1990, at No. 87–206–E, is reversed and this case is remanded. On remand, the board is to consider whether 25 Pa.Code § 87.127 creates a class distinction with no rational basis, and whether 25 Pa.Code § 87.127 violates a statutory right set forth in 52 P.S. § 1396.4b(c).

Pursuant to this order, the EHB, based on affidavits and a stipulation of facts, determined that the regulations were violative of the statute, found it unnecessary to consider the constitutional question, denied DER's motion for summary judgment and granted Croner's motion for summary judgment. The EHB decision, while unanimous in disposing of the summary judgment motions, contained a concurring and dissenting opinion. Reargument was then allowed and the original conclusion was sustained with a further opinion.

The crux of the controversy in this appeal involves Section 3 of the SMCRA, 52 P.S. § 1396.4b(c), which states

From the effective date of this act, as amended hereby, no operator shall conduct surface mining operations (other than borrow pits for highway construction purposes) within one hundred feet of the outside line of the right-of-way of any public highway or within three hundred feet of any occupied dwelling, *unless released by the owner thereof,* nor within three hundred feet of any public building (emphasis added),

and the regulation at 25 Pa.Code § 87.127

(e) An airblast shall be controlled so that it does not exceed the noise level specified in this subsection at a

dwelling, public building, school, church or commercial or institutional structure, unless the structure is owned by the person who conducts the surface mining activities and is not leased to another person. The lessee may sign a waiver relieving the operator from meeting the airblast limitations of this subsection.

(h) In blasting operations, except as otherwise authorized in this section, the maximum peak particle velocity may not exceed 1 inch per second at the location of a dwelling, public building, school, church, or commercial or institutional building or other structure designated by the Department. Peak particle velocities shall be recorded in three mutually perpendicular directions. The maximum peak velocity shall be the largest of any of three measurements. The Department may reduce the maximum peak particle velocity allowed, if it determines that a lower standard is required because of density of population or land use, age or type of structure, geology or hydrology of the area, frequency of blasts or other factors.

(i) The maximum peak particle velocity limitation of subsection (h) does not apply at the following locations:

(1) At structures owned by the person conducting the mining activity, and not leased to another party.

(2) At structures owned by the person conducting the mining activity, and leased to another party, if a written waiver by the lessee is submitted to the Department prior to blasting.

In considering these two provisions,[3] DER reached the conclusion that the regulation's provisions for maximum peak particle velocity at the location of a structure do not apply where either the structure is owned by the person operating the mine or where, if the structure is leased to another by the person conducting mine operations, a waiver by the lessee is submitted to DER prior to the blasting; however, an owner of an occupied dwelling *other than* the mining operator or its

---

3. This provision is only one subsection of the many limitations on blasting required by the regulations.

lessee may not validly waive the maximum peak particle velocity limitations.

Faced with that analysis by DER, the EHB held that the regulation quoted above conflicted with the statute and therefore was invalid, since nothing in the statute permitted this kind of limitation on the rights of the owner of the structure who happened not to be the mining operator or its lessee.

DER argues that the decision of the EHB was in error because DER was authorized to promulgate rules and regulations such as this one in order to protect the general public. We agree that SMCRA legislatively granted to DER (through the EQB) the authority to promulgate "such reasonable rules and regulations as may be deemed necessary by the department for the fulfillment of the purposes, and provisions of [SMCRA] and other acts where applicable ... for the health and safety of those persons engaged in the work and for the protection of the general public," 52 P.S. § 1396.4b(a), and we also agree that SMCRA authorizes the promulgation of reasonable regulations of blasting activities.

Thus, we have no doubt that, for the protection of the public, a regulation could have been adopted which regulated in *all* instances the maximum peak particle velocity regardless of the ownership of the structure at the location of the blasting. However, that was not done here. Instead, the regulation made exceptions. It excepted the situation where the mining company owned the structure and even excepted the case where a lessee of the mining company executed a waiver; it did not except the situation where a third party not in any relationship to the mining company owns the structure. We do not consider such a regulation to be reasonable. It certainly cannot be contended that such a regulation is necessary for the protection of the workers or the public when the structure is owned by a third party but is not necessary when the structure is owned by the mining company or its lessee. There is obviously no valid distinction that can be made to support the argument that mine operators and their lessees do not operate against the public interests when they exceed the noise and the maximum peak particle velocity limitations but

that, when mine operators exceed the regulations under a waiver from a third party owner, they do damage the public interests.

We therefore hold that the regulation as interpreted by DER is unreasonable and therefore not authorized by 52 P.S. § 1396.4b(a).[4]

DER also argues that it may so regulate because blasting which causes damage to the property of others constitutes a nuisance, citing *Commonwealth of Pennsylvania, Department of Environmental Resources v. Glasgow Quarry, Inc.*, 23 Pa.Commonwealth Ct. 270, 351 A.2d 689 (1976). We agree with this proposition. But, again, if this proposition is relevant, it is also just as relevant as against mining where the coal operator owns or leases the structure, and such blasting should *ipso facto* not be permitted. We think DER's proposition has no application here, where statutory and regulatory interpretation is required. DER refers us to *Glasgow*, but that case is inapplicable. There, DER alleged that certain blasting was a nuisance. The EHB held a ten-day hearing and concluded there was in fact a nuisance. Appropriate here is the comment of the EHB.

> Further, we find specious DER's argument that the regulations may restrict the Hartmans' use of their property because blasting is a public nuisance. Any and all blasting is not a public nuisance, as DER suggests. If it were, then even blasting carried on in accordance with DER's regulations would be a public nuisance. Only blasting creating a

---

4. The above discussion may also provide some basis for a conclusion that there has been an irrational class distinction, but it is not necessary to decide that question. However, we do conclude that there is no conflict between the statute permitting waiver and the code regulations. The statute obviously deals with the *distance* limitation (300 feet) on blasting and not the *velocity* limitations that are found in the subject regulations. There are no words in the statute which give the owner of the structure the right to waive the velocity regulation. In fact, the distance limitation is considered in another regulation, 25 Pa.Code § 87.137(f)(4), which mirrors the statute and provides:

> (4) Blasting may not be done within the confines of an area of 300 feet of an occupied dwelling unless prior consent of the property owners has been obtained.

hazard to the public health or safety or which is contrary to DER's general applicable blasting regulations is a nuisance pursuant to § 1396.4b(a). Where the regulations at 25 Pa.Code § 87.127(e) and (i) provide for a waiver of the blasting limitations by a lessee of the coal mining operator, DER cannot convince us that the fact that the Hartmans are neither such a lessee nor a coal miner means their use of their property must be restricted because this blasting is a public nuisance.

Nonetheless, DER argues *also* that the purpose of the distinction in the regulation between mine operators who own a structure and non-mine operator owners is to protect the non-mine owners. DER points out that the United States Secretary of the Interior considered the question under parallel federal regulations and concluded that private homeowners might be subjected to undue coercion by the mine owner if *they* were allowed to waive maximum velocity requirements. We do not agree. The homeowner is granted the right to waive the 300–foot distance requirement, and we see no reason why there is likely to be any less coercion by the mine owner in obtaining this statutorily permissible waiver than there would be in obtaining the waiver of the noise and velocity requirements.[5] In addition, there may be many instances where the owner of the structure may be willing, in return for compensation, to risk property damage and specifically waive both the distance and noise/velocity requirements. We therefore sustain the decision of the EHB on the grounds that the regulation itself is unreasonable.

We recognize that our decision is on a ground that was not included within our prior order to the EHB. But the question of the reasonableness of the regulation was argued before the EHB, discussed by it, argued before this court and is certainly involved in this case.

We therefore affirm the decision of the EHB.

5. There is no contention here that the release waiver was executed under any coercion or influence.

## ORDER

AND NOW, this 4th day of December, 1992 the decisions of the Environmental Hearing Board at No. 87–206–E, dated November 20, 1991 and December 30, 1991, are hereby affirmed.